

January 30, 2002

P. O. Box 285
Deerfield, Il 60015-0285

Todd Bennett
77 Harmony Hill Rd.
Granby, CT  06035

Re:    **Long Term Disability:**  Accenture
         **Policy No.:**              657455
         **Claim No.:**              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

Dear Mr. Bennett:

This letter is written in reference to your long term disability (LTD) claim with Aetna Life Insurance Company. As you know, we have been providing you monthly disability benefits since July 6, 1997, as a result of a claimed disability commencing on April 4, 1997.

**Policy Overview**
To remain eligible for disability benefits under the above referenced policy, you must continue to satisfy the policy definition of total disability, which is defined as:

**Total Disability/Totally Disabled** means:

For Active Regular Employees with a job class code of 30 or above, that solely because of an illness, pregnancy, or accidental bodily injury, an insured employee is unable:

1.    During the first 5 years of disability to perform the material duties of the employee's own occupation.
2.    From then on, to work at any occupation for which such employee is, or may reasonable become, fitted by education, training or experience.  The availability of employment will not be considered in the assessment of the employee's disability.

In addition, your eligibility for long term disability benefits in accordance with the own occupation portion of the above quoted definition of total disability ends on April 3, 2002.  Effective April 4, 2002, the any occupation definition of total disability is applicable to your claim.

**Overview of Eligibility for Long Term Disability (LTD) Benefits:**
To determine your continued eligibility for LTD benefits, Aetna will compare the vocational requirements of your former occupation with your reported physical/functional capacity level and your medical restrictions and limitations as provided by your physician(s) of record:

**Overview of Medical Information:**
According to the information contained in your file, you left work in April 1997, claiming impairment due to muscle fatigue, allergies, and the inability to concentrate.  You underwent an Independent Medical Exam (IME) in July 1997, with Dr. Murray Wellner.  Dr. Wellner stated that there was no readily available diagnosis to explain your variety of symptoms.  There were no positive physical findings and very few abnormal laboratory objective data to support any specific diagnosis at that time.   Your

AETNA 61

Todd Bennett
January 30, 2002
Page 2 of 6

restriction was that you should avoid high level computer analysis because of your complaints of inattentiveness and loss of focus. He commented that he believed this restriction would be temporary.

Dr. Robban Sica completed Attending Physicians Statements stating your diagnoses were chronic fatigue with neuropathy, weakness, fatigue, cognitive impairment and paresthesis, and diagnostic studies showing copper toxicity.

In an attempt to determine your current medical status, updated medical information was requested from your treating sources.

Dr. Glen Gart, your dermatologist, completed a Physical Capacities Evaluation (PCE) on January 15, 2001 and submitted office notes from May 1999 to October 1999. He completed the PCE stating you were capable of a sedentary exertion level. He stated that he saw you for severe dyshidrotic eczema on your hands.

Dr. William Petit responded to our request on January 22, 2001 advising that you were undergoing a comprehensive evaluation at Gaylord Hospital. He stated that he would respond to our request when this examination was completed. On April 11, 2001, Dr. Petit submitted office notes from December 1998 and January 1999. Your complaints were your heart felt like it was skipping a beat. You reported this occurred several times a day with normal activities and that this had started in September 1998.

Dr. Petit submitted a Physical Capacities Evaluation in which he assessed you were capable of a light exertion level. He advised that you were capable of returning to work on a part time basis, 3 days a week, for 3 hours a day and to progress as tolerated. An MRI brain scan dated June 1999 was included. The impression was a "stable brain MRI." Blood work from March 2000, May 2000, and January 2001 were normal and did not indicate elevated copper levels.

Dr. Petit also submitted your evaluation from Gaylord Hospital dated January 16, 2001. This evaluation indicated that you reported difficulty in concentrating and decreased physical stamina. You reported using an elliptical trainer 10 minutes a day and that you walked 10 minutes a day. The goal was to decrease your fatigue and increase your overall strength. You were to join a gym with an eventual return to work.

Medical information was received from Dr. Robban Sica covering the time period of 1997 to February 2001. An office note dated April 17, 1999, indicated you were undergoing chelation treatments. Noted in the medical information, you were undergoing acupuncture treatments and were feeling an elevated energy level. Dr. Sica's office note of February 15, 2001 indicated your condition was essentially unchanged, with some fatigue. You were not taking any medications. It was also noted you were undergoing physical and cognitive therapy at Gaylord Rehab which seemed to be helping a bit. Noted was your test for 'Wilson's' diagnosis, which was negative. Your diagnosis was docuemtned as CFS and adrenal insufficiency. Dr. Sica completed a Physical Capacities Evaluation (PCE) in which indicated that you had a less than sedentary exertion level.

Dr. Lynne Frieburger-Epstein advised she had not seen you since October 2000 and she was unable to complete the Physical Capacities Evaluation. She submitted office notes for the time period of May 14, 2000 to October 17, 2000. The office notes indicate your chief complaint was "the inability to make it through a day of regular activities, cannot concentrate, heaviness in (your) limbs, and muscle twitches". Dr. Frieburger-Epstein noted your diagnosis was copper toxicity. You were to undergo chelation treatments and tests indicated your liver enzymes were elevated.

AETNA 62

Throughout the office notes, your complaints were of fatigue, muscle twinges, general lack of energy and decreased level of concentration. However, the office notes document your treatments of osteopathic manipulation to your lumbar, sacral, pelvic, thoracic, rib cage, cervical, head, upper and lower extremities. In the last office visit of October 2000, you reported a slight improvement since your last treatment, but reported that you continued with difficulty with concentration. You reported decreased joint pain and an increase energy level.

We received copies of the comprehensive examination and rehabilitation records from January 2001 from Gaylord Hospital. Dr. Jerrold Kaplan performed your physical exam. On exam you were noted to be a well-developed and well-nourished man in no acute distress. You reported significant fatigue, however, you also reported that you had made dramatic progress. Dr. Kaplan recommended your gradual return to work to your former duties. As of January 2001, Dr. Kaplan recommended a work schedule of 4 hours per day, 3 days per week and advance as tolerated.

The comprehensive examination performed January 2001 included a communication/cognitive evaluation. Your complaints included fatigue, decreased mental and physical stamina, decreased concentration, muscle twitches and tingling. However, the evaluation was concluded that in all areas, you were functioning within normal limits.

The comprehensive examination performed January 2001 included a neuropsychological evaluation. Your complaints included difficulties in problem solving, concentrating, reading, writing, weakness and paresthesia in your extremities. You reported you were not taking any medications. The results of this testing were positive and indicated you were currently functioning at a level that was commensurate with your estimated pre-morbid abilities. You demonstrated high average to superior basic attention, visual spatial skills, language abilities, memory, general intelligence and higher order 'problem solving' skills. It was noted you exhibited average mental control and concentration as well as 'slightly' asymmetric performance on motor tasks with your non-dominant side, however it was noted that this was unlikely to present significant difficulties in your daily functioning.

The conclusion of this evaluation was that you had not sustained any obvious or permanent cognitive deficits as a consequence of copper toxicity, but you might experience significant fatigue after several hours of strenuous work. The recommendation was to gradually transition you into the work force. You underwent physical therapy in January 2001 and were later discharged with no further treatment recommended. A phone call to Gaylord Hospital indicated you had undergone rehabilitation until February 1, 2001.

A psychologist consultant file review was performed on July 17, 2001, including the most recent neuropsychological testing performed in January 2001. The psychologist consultant stated that you had experienced subjective impairment in your cognitive abilities secondary to fatigue and/or copper toxicity. Objective testing revealed your attention capacity was above average and you demonstrated intact performance on extended tasks of attention. The consultant assessed the documentation failed to reveal any cognitive deficits in the present that would preclude your ability to function in a competitive work environment and that you were currently functioning at a level that is commensurate with your estimated pre-morbid abilities.

A physician consultant file review was performed on August 3, 2001. The physician consultant noted that Dr. Sica opined you were unable to perform your occupation due to severe fatigue and increasing cognitive dysfunction. The physician consultant noted that Dr. Sica's PCE indicated that you could perform less than sedentary work, despite positive data and normal urine copper levels. The positive data included normal motor strength, 107 lb. right handgrip and 82 lb. lefthand grip and Dr. Kaplan report that you could "go back to work". The physician consultant noted that other physicians have described you as

AETNA 63

Todd Bennett
January 30, 2002
Page 4 of 6

'well now'. The physician consultant assessed you had the physical capacity to engage in a heavy exertion level with minimal limitations.

The physician and psychologist consultant reports were sent to Dr. Petit, Dr. Kaplan and Dr. Sica on August 3, 2001 for review and comments.

Dr. Petit responded on August 3, 2001. He advised that he did not agree or disagree with the review. He did not supply any additional objective medical evidence with his response.

Dr. Sica responded on August 20, 2001, advising that she did not agree with the physician consultant review. She advised that she began seeing you in April 1997 and testing revealed copper toxicity. She explained that the Connecticut area where you were from had copper mines and the copper gets into the drinking water. She further advised that you have Chronic Fatigue Syndrome, neuropathy, multiple endocrine dysfunctions, multiple inhalant allergies and severe eczema.

Dr. Sica indicated the current goal was to get you back to work, however she disagreed with the 40 hour work week at this time. She stated that you were no longer toxic but you still experienced an aftermath of symptoms, which include muscle twitches, tingling in your arms and legs and heaviness in your extremities, along with a reduced concentration capacity and limited mental and physical stamina. She reported that with copper toxicity treatment, there may be many years of associated symptoms and that you would not be able to do your job as a computer consultant as it required extensive analytical and mental skills. She assessed you would be able to return to work initially 3 days a week, 3 hours each day. As you progressed, you would be able to increase your hours gradually and hopefully return to full time work.

Dr. Jerrold Kaplan sent a letter dated August 21, 2001. Dr. Kaplan stated you had been in the office that day. He advised that you would be able to return to work, 20 hours a week and you could gradually work up to a 40 hour work week in a month's time.

These reports were forwarded to the physician consultant for review.

The physician consultant stated that Dr. Kaplan advised, after an August 21, 2001 appointment, you would be capable of gradually returning to full time employment over the next four weeks. Dr. Sica indicated you were successfully treated for copper toxicity. The physician consultant stated that your restrictions and limitations were adequately outlined in his report and the physical capacities evaluation. There was no additional evidence provided to alter the original review.

In a October 26, 2001phone conversation with your wife, she advised us that you had secured employment with Harley Bennett Avionics, Inc, effective on November 1, 2001. She told us that your employer was aware of your restrictions and was willing to accommodate you. She stated that the goal was that once you had successfully completed the training, it would develop into a position. On November 1, 2001, your wife forwarded the name, address of the employer and a brief description of your duties.

On January 9, 2002, we telephoned Mr. Harley Bennett, owner of Harley Bennett Avionics, Inc. requesting information regarding your employment. Mr. Bennett advised us that you had started your employment on November 1, 2001. You were working part time, four hours a day, five days a week. Mr. Bennett stated that you continue to work that schedule today. He reported that you are getting no income as you are in training.

AETNA 64

Todd Bennett
January 30, 2002
Page 5 of 6

**Overview of Occupational Information**:
To assess your vocational capabilities, your claim file was referred to a certified rehabilitation counselor who reviewed a summary of your work experience, education and training.

Based upon your transferable skills, a vocational assessment was performed which identified a sampling of occupations for which you are qualified and which are commensurate with your ability to engage in gainful employment. These positions include, but are not necessarily limited to:

- Systems Analyst
- Consultant
- Logistics Specialist
- Information Scientist

Please note that the occupations identified above are considered sedentary in nature and are commensurate in earnings with your disability income.

**Summary:**
Based upon the pertinent medical and vocational documentation contained in your claim file, we have determined that you retain the capacity to perform any occupation. As a result, we have concluded that you no longer satisfy the policy definition of disability quoted above. Consequently, we must deny any further liability for the payment of LTD benefits, arising under this policy, effective April 7, 2002 and will close your claim as of that date.

In order to assist you financially during the transitional period, Aetna Life Insurance Company will release your payments through April 4, 2002. The release of this payment is not to be construed as an admission of liability on the part of Aetna. We reserve the right to enforce any and all provisions of this policy.

**Appeal Rights**
If you disagree with this termination of benefits, you have the right to appeal the decision. Aetna will review any additional information you care to submit, such as medical information from all physicians who have treated you for the condition(s) in question, including but not limited to:

- A detailed narrative report outlining in objective terms the specific physical and/or mental limitations and restrictions inherent to your condition which your doctor has placed on you as far as gainful activity is concerned;

- physician's prognosis including course of treatment, frequency of visits, and specific medications prescribed;

- copies of diagnostic studies conducted during the above period, such as test results, X-rays, laboratory data and clinical findings; and

- any documents or information specific to the condition(s) for which you are claiming total disability, and which would assist in the evaluation of your disability status;

- any other information or documentation you believe may assist in reviewing your claim.

Todd Bennett
January 30, 2002
Page 6 of 6

To obtain a review, you or your representative should submit a request in writing to Aetna Life Insurance Company addressed to the LTD Quality Review Section at this address. Your request should include the group name, your name, Social Security number and other identifying information shown in this letter and the issues and comments you would like to have considered. You may also review documents pertinent to your claim.

Written request for review must be mailed or delivered within 60 days following receipt of this explanation or such longer period as may be specified in your plan brochure or Summary Plan Description. Ordinarily, you will receive notification of the final determination within 60 days following receipt of your request. If special circumstances require an extension of time, you will be notified of such extension during the 60 days following receipt of your request.

We trust this letter clearly explains our position to you. Please do not hesitate to contact me at this number if you have any questions or concerns.

Sincerely,


Carrie Jo Peters
Disability Management Specialist
Aetna Life Insurance Company
Group Benefits Department
1-888-763-6464