## Medical Consult Response

**Claimant Name: Todd Bennett**
**D.O.B.  May 9, 1970**

**Claim No./SS# 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**

**Referred By: Carrie Jo Peters**

Aetna Life Insurance Co.

**Consultant's Response:**

Medial consultant is asked to evaluate physical capacities.

Date of disability is April 4, 1997 and "transition date" is April 3, 2002.

The claimant is a 30-year-old male who worked as an Engineering Consultant. It is unsure if he had contact with volatile metals such as copper, which would increase his urine levels and the basis for which he was adjudged disabled.

He states, "he thinks his high blood copper levels started at home in Connecticut, in his consumption of well water."

Nevertheless in the course of a diagnostic work-up his urine copper levels were found to be gradually climbing (normal being 2-30). His levels were as high as 950, and dropped eventually after Chelation treatment with EDTA to normal i.e., 8.  A liver biopsy at the University of Michigan reportedly revealed a fatty liver, but there is no report as to whether traces of copper were found in the liver.

His serum ceruloplasmin level was normal, tending to rule out a congenital Wilson Disease.

The basis for which the claimant was originally allowed was "copper toxicity," which proportedly resulted in excessive fatigue and impairment of cognitive abilities.

On March 25, 1998, Dr. Mark Josel felt strongly the claimant had copper toxicity, "based on the rising urinary copper levels and recommended the Chelation which was done. The level then dropped to normal.

His April 1998 physical exam was normal short of the claimant's subjective complaints of severe fatigue.

Dr. Robban Sina (April 1997) opined the claimant was unable to perform his occupation because of his severe fatigue and his gradually increasing cognitive dysfunction. This was manifest by short attention span, inability to correlate data, etc., and was thought to be a direct effect of the "copper toxicity."

After his exam on July 21, 1997, Dr. Murray Welldner recommends no physical restrictions.

**AETNA 154**

Page Two
Todd Bennett
August 3, 2001

Dr. Sina's opinion appears to prevail.

Currently

Dr. Petil notes, 5/5 motor strength and 107 lb. right handgrip and 82 lb. left handgrip.

Dr. Kaplan concurs, "well now" status post treatment. The claimant's muscle skeletal and range of motion all normal. He opines, "go back to work."

Dr. Graft, dermatologist, says he can only lift 10 lbs. "when his rash affect his hands." This isn't ongoing and doesn't consider his 6'2", 225 lb. stature. I would disregard this.

Dr. Sina submits a PCE despite all the above data and now normal urine copper levels, that he can only do less than sedentary physical capacity.

I believe that from the extremely diverse array of laboratory testing that Dr. Sina may be an "Environmentalist Physician" e.g. amino-acid studies, etc.

She submits that he has (based on a single 1 mgm low cortisol level) had adrenal insufficiency and a high T4, and nondetectable TSH would suggest hyperthyroidism (not hypothyroidism). These test results can be the result of treatment with thyroid medication, which it appears he is on.

It should also be noted that it is a very common practice for cortisol levels to be used to confirm a diagnosis of depression, and this may be result of such, i.e. the low cortisol levels.

Dr. Daniel B. LoPreto, Ph.D., describes that at present the claimant not only has no signs of cognitive dysfunction, but he exhibits testing consistent with above average intelligence, and high to superior attention span.

The claimant has had negative lyme titer, Erhlichosis, tests for lupus, and a normal MRI of the brain. Dr. Sina comments on two occasions about fasciculations, which may be normal, but can if truly present and progressive, be associated with amyotrophic lateral sclerosis. He has no obvious musculo-skeletal findings suggestive of this type of neurologic impairment.

Furthermore, per Dr. LoPreto, "he retains superior encoding, storage and retrieval capacity for verbal/non-verbal information and is entirely capable of learning and remembering new information presented to him."

AETNA 155

Page Three
Todd Bennett
August 3, 2001

I believe he can do an unrestricted physical capacity with the only restriction being avoidance of close contact with volatile or liquid chemicals such as copper, mercury, hydrocarbons. He had fatty liver, (on biopsy) negative hepatitis antigens, and mildly elevated liver function tests. He is only 30 years old.

Signed: _James P. Cole_                    Date: August 3, 2001
          James P. Cole, M.D.

AETNA 156

# Medical Consultant Review - Estimation of Physical Capacities

| Patient Name: | Todd Bennett | Birth Date: | May 9, 1970 | Claim ID Number: | 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 |
|---|---|---|---|---|---|

**A.** Check the box that most closely demonstrates the patient's ability to perform the noted activity on a *continuous basis*. "**Not Restricted By Condition**" means the medical condition does not affect the patient's function in this area.

|  | ½ hr. | ¼ hr. | 1 hr. | 2 hrs. | 3 hrs. | 4 hrs. | 5 hrs. | 6 hrs. | Not Restricted by Condition |
|---|---|---|---|---|---|---|---|---|---|
| Sit: | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Stand: | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Walk: | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |

**B.** Assuming the patient can change positions as needed, check the box that demonstrates the patient's ability to perform the noted activity *during a typical work schedule*. "**Not Restricted By Condition**" remains as defined above. Total time can exceed 8 hours, since you are evaluating each activity separately.

|  | 1 hr. | 2 hrs. | 3 hrs. | 4 hrs. | 5 hrs. | 6 hrs. | 7 hrs. | 8 hrs. | Not Restricted by Condition |
|---|---|---|---|---|---|---|---|---|---|
| Sit: | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Stand: | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Walk: | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |

**C.** In an 8-hour workday the patient retains the ability to lift, carry or exert force up to:

- ☐ In excess of 100 pounds/44.50 kilograms and frequently lift/carry 50 pounds/22.25 kilograms
- ☒ 100 pounds/44.50 kilograms maximum and frequently lift/carry up to 50 pounds/22.25 kilograms
- ☐ 50 pounds/22.25 kilograms maximum and frequently lift/carry up to 50 pounds/22.25 kilograms
- ☐ 20 pounds/8.9 kilograms maximum and frequently lift/carry up to 25 pounds/11.13 kilograms
- ☐ 10 pounds/4.45 kilograms maximum and occasionally carry small objects.

**D.** Please assess patient's capabilities to utilize extremities during a normal workday (NWD):

- %'s (Continuously, Frequently, Occasionally) represent period of a normal workday activity can be performed.
- Not Restricted by Condition means the medical condition does not affect the patient's function in this area.
- Never means the extremity is fully and completely impaired as a result of the condition.
- Handling: Seizing, holding, grasping, turning or otherwise working with hand or hands. Fingers are involved only to the extent that they are an extension of the hand, such as to turn a switch or shift automatic gears.
- Fingering: Picking, pinching, or otherwise working primarily with fingers rather than with the whole hand or arm as in handling.
- Feeling: Perceiving attributes of objects (size, shape, temperature, or texture) by touching with skin, particularly that of fingertips.
- *(LUE/RUE: Left/Right Upper Extremity, LLE/RLE: Left/Right Lower Extremity)

| Extremity Function | | Not Restricted by Condition | Continuously > 66% of NWD | Frequently 33 to 66% | Occasionally 0 to 33% | Never |
|---|---|---|---|---|---|---|
| Handling/Grasping | LUE | ☒ | ☐ | ☐ | ☐ | ☐ |
|  | RUE | ☒ | ☐ | ☐ | ☐ | ☐ |
| Fingering | LUE | ☒ | ☐ | ☐ | ☐ | ☐ |
|  | RUE | ☒ | ☐ | ☐ | ☐ | ☐ |
| Feeling | LUE | ☒ | ☐ | ☐ | ☐ | ☐ |
|  | RUE | ☒ | ☐ | ☐ | ☐ | ☐ |
| Pushing/Pulling | LUE | ☒ | ☐ | ☐ | ☐ | ☐ |
|  | RUE | ☒ | ☐ | ☐ | ☐ | ☐ |
| Operating Foot Controls | LLE | ☒ | ☐ | ☐ | ☐ | ☐ |
|  | RLE | ☒ | ☐ | ☐ | ☐ | ☐ |

Patient's dominant hand:  ☐ Right    ☐ Left    ☒ Unknown

**E.  Complete patient's other physical capabilities based on a normal workday (NWD):**

- %'s (Continuously, Frequently, Occasionally) represent period of a normal workday activity can be performed.
- Not Restricted by Condition means the medical condition does not affect the patient's function in this area.
- Never means the patient's function is fully and completely impaired as a result of the condition.
- Stooping: Bending body downward and forward by bending spine at the waist, requiring full use of the lower extremities and back muscles.
- Crouching: Bending body downward and forward by bending legs and spine.

| Function | Not Restricted by Condition | Continuously > 66% of NWD | Frequently 33 to 66% | Occasionally 0 to 33% | Never |
|---|---|---|---|---|---|
| Climbing | ☑ Stairs | ☑ ladders | ☐ | ☐ | ☐ |
| Stooping | ☑ | ☐ | ☐ | ☐ | ☐ |
| Kneeling | ☑ | ☐ | ☐ | ☐ | ☐ |
| Balance | ☑ | ☐ | ☐ | ☐ | ☐ |
| Crouching | ☑ | ☐ | ☐ | ☐ | ☐ |
| Crawling | ☑ | ☐ | ☐ | ☐ | ☐ |
| Reaching above shoulders | ☑ | ☐ | ☐ | ☐ | ☐ |
| Reaching forward <18" (arm length not requiring spinal flexion-desk top work) | ☑ | ☐ | ☐ | ☐ | ☐ |
| Reaching forward >18" (greater than arm length requiring spinal flexion) | ☑ | ☐ | ☐ | ☐ | ☐ |
| Exposure to marked changes in temperature and humidity | ☑ | ☐ | ☐ | ☐ | ☐ |
| Exposure to dust, fumes and gases | ☐ | ☐ | ☐ | ☑ | ☐ |
| Proximity to moving mechanical parts | ☑ | ☐ | ☐ | ☐ | ☐ |
| Working in high, exposed places | ☑ | ☐ | ☐ | ☐ | ☐ |
| Driving automotive equipment (Working Environment) | ☑ | ☐ | ☐ | ☐ | ☐ |
| Driving automotive equipment (Personal Environment) | ☑ | ☐ | ☐ | ☐ | ☐ |

**F.  Has the patient achieved maximum medical improvement (MMI)?** ☑ Yes  ☐ No  ☐ Unknown

If Yes, provide date MMI achieved.  If No, provide date MMI is anticipated.  _Happens ro_

**G.  Remarks:**

AETNA 158

| Print Name: | JAMES B. Cole MD | Date: 2/27/01 |
|---|---|---|
| Phone No.: (847) 236-6637 | | Signature: James B. Cole MD |
| Fax No.: ( ) | | |

This evaluation is based solely upon the clinical evaluations, objective  medical evidence and diagnostic test results in the medical records at the time this form was completed.  The reviewer did *not* examine the patient.