UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TODD A. BENNETT | : 3-02 CV 2299 (AWT) |
| Plaintiff, | : |
| v. | : |
| AETNA LIFE INSURANCE COMPANY | : |
| Defendant. | : November 20, 2003 |

**REPLY BRIEF OF AETNA LIFE INSURANCE COMPANY
IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff's Opposition to Aetna's motion for summary judgment provides no basis to deny defendant's motion. Plaintiff's brief misstates the applicable standard of review and disregards the substantial medical evidence from both treating physicians and independent experts that, after five years of treatment, plaintiff was capable of assuming full-time employment in a new occupation. The principal arguments in plaintiff's brief are addressed below:

    1.    **Aetna's Denial of Benefits Is Subject to Review Under the
           Arbitrary and Capricious Standard.**

Plaintiff argues that the Court should disregard the grant of discretion contained in Accenture's Summary Plan Description ("SPD") and that Aetna's decision should be reviewed de novo because the insurance policy between Accenture and Aetna does not expressly confer discretionary authority on Aetna to make eligibility decisions. (Pl. Opp. at 9.) Plaintiff does

not cite any authority to support this proposition which is, in fact, directly contradicted by numerous decisions within this Circuit.[1]

The Second Circuit has recognized that a Summary Plan Description plays a special role in identifying the terms of an ERISA benefits plan because ERISA itself mandates the creation of such summaries and these documents are often the only plan document that is actually distributed to employees. The Court of Appeals relied on such factors in Heidgerd v. Olin Corp., 906 F.2d 903, 907 (2d Cir. 1990), in holding that the language of the employer's SPD governed the terms of its severance plan. Id. at 907. In addition, directly contradicting plaintiff's position here, the Court in Heidgerd looked to the language of the SPD in determining the appropriate standard of review. Id. at 908-09. Finding no grant of discretion in the SPD, the Court concluded that the denial of benefits should be reviewed de novo.

Moreover, courts within this Circuit have specifically rejected plaintiffs' reliance on silent group insurance policies to establish a de novo standard of review where an SPD contains language conferring discretion on the plan administrator. In Friedman v. Consolidated Edison Co. of New York, 97 CIV 2735, 1999 U.S. Dist. LEXIS 10899 (S.D.N.Y. 1999) (copy attached as Exhibit A), the District Court relied on the language of the SPD to determine the standard of review applicable to a denial of long-term disability benefits. The court stated that "[t]here can be little dispute that the appropriate standard of review is the arbitrary and capricious standard, since the language of the SPD explicitly places benefit

---

[1] Neither Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243 (2d Cir. 1999) nor Perez v. Aetna Life Ins. Co., 150 F.3d 550 (6th Cir. 1998), cited by plaintiff (Pl. Opp. at 10-11), involved a SPD that conferred discretion on the plan administrator. Accordingly, neither decision is relevant here.

determinations at the discretion of Con Edison and Met Life." Id. at *41. The court rejected the plaintiff's argument that the group health insurance policies between his employer and Met Life determined the standard of review, stating that these policies were simply contracts between the employer and its insurer and did not purport to establish the terms of the ERISA plan. Id. at *42-43. The court also noted that "plaintiff has pointed to no language that would alter the benefit determination process outlined in the SPD or deprive either Con Edison or Met Life of discretion in denying or awarding benefits." Id. Similarly, Mr. Bennett has not identified language in the group insurance policy between Accenture and Aetna that is inconsistent with a deferential standard of review.

In Montesano v. Xerox Corp. Retirement Income Guarantee Plan, 117 F. Supp. 2d 147, 156-57 (D. Conn. 2000), rev'd on other grounds, 256 F.3d 86 (2d Cir. 2001), the District Court for the District of Connecticut adopted the reasoning of Friedman and rejected the plaintiffs' argument that the insurance contracts between the employer and its insurance company, rather than the SPD, determined the standard of review. In holding that the arbitrary and capricious standard applied, Judge Nevas "considered and rejected the plaintiffs' claim that the insurance contracts, not the SPD, govern the scope of review." Id. at 157. Applying general principles of contract law, the Court concluded that "the settlor's [i.e., the employer's] intent to confer such discretion on the Plan Administrator is unambiguously expressed in the SPD. Such an expression of intent is compelling." Id. Similarly, in Wojciechowski v. Metropolitan Life Ins. Co., 75 F. Supp.2d 256, 262 (S.D.N.Y. 1999), aff'd, 2001 WL 38263 (2d Cir. 2001), the court rejected the plaintiffs' argument that the provisions in the SPD could not confer discretion on Met Life to determine eligibility for LTD

benefits, noting that "our Circuit has validated the use of a SPD as the vehicle through which an employer is to provide the necessary plan information to its employees." See also Maniatty v. UnumProvident Corp., 218 F. Supp.2d 500, 502 (S.D.N.Y. 2002) (relying on language of SPD to find discretionary authority for plan administrator.)[2]

Accordingly, Aetna's decision to deny Mr. Bennett further disability benefits at the end of five years may be rejected only if the Court concludes that it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995). "Substantial evidence" is evidence that "a reasonable mind might accept as adequate to support the conclusion reached" and requires "more than a scintilla but less than a preponderance." Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995). As the extensive medical record demonstrates, far from being unreasonable, Aetna's decision is well supported by the weight of medical opinion and for that reason more than satisfies the "highly deferential" arbitrary and capricious standard of review. See Pagan, 52 F.3d at 442.

2.  **Aetna Properly Interpreted the Disability Provisions of the Plan.**

Plaintiff argues that Aetna has interpreted the total and partial disability provisions of the Accenture Plan in a manner that is incompatible. Pl. Opp. at 12-13. Aetna's interpretation of the disability provisions is consistent with the Plan, however, and a proper exercise of its

---

[2] Plaintiff makes a passing reference to a "disclaimer" contained in the introduction to Accenture's SPD. Pl. Opp. at 9. The cited language provides that, in the event of "inconsistencies" between the SPD and other plan documents, the latter will govern. This language is not relevant here. The insurance policy is not inconsistent with the SPD on the question of Aetna's discretion to make claims decisions; it is simply silent on that issue. Further, plaintiff's contention that the SPD is not relevant because it is only a "booklet handed out to employees by the employer" (Pl. Opp. at 9) disregards the importance that the Second Circuit has attached to such documents for the very reason that they, rather than the insurance policy, are provided to employees. See Heidgerd, 906 F.2d at 907.

"discretionary authority to make determinations regarding the interpretation or application of Plan provisions." SPD, p. 1 (attached to volume 2 of Aetna's Appendix of Exhibits.)

Accenture's Plan provides that, for the first five years of disability, benefits will be paid to an individual who is unable to perform the material duties of his "own occupation." Def. Ex. A., p. G-17 (vol. 2 of Aetna's Appendix). Thereafter, benefits will continue to be paid only if the claimant is unable to work at "any occupation" for which he is, or may reasonably become, "fitted by education, training or experience." Id. Aetna construed these provisions to require that, if Mr. Bennett could not prove that he was disabled from performing the duties of "any occupation," he was not entitled to benefits for either total or partial disability. Moreover, Aetna informed plaintiff that it was denying his request for partial disability payments on the facts of his claim because "restrictions to part-time work only are not objectively corroborated." (Letter of August 22, 2002, AR at 3.)[3]

Aetna's interpretation was a reasonable and logical exercise of Aetna's discretionary authority to interpret Plan provisions. By comparison, plaintiff's position, which would effectively require an insurer to pay partial disability benefits after five years to any claimant who could not return to his previous employment, is a misapplication of the disability provisions of Accenture's plan.

---

[3] See Bailey v. Provident Life & Accident Insurance Co., 3:99CV394, 2000 WL 33980014, at * 11-12 (N. D. Fla. 2000) (copy attached as Exhibit B), holding that rejection of disability claim based on subjective complaints of fatigue and "inability to focus" was proper where medical testing showed plaintiff functioning in average to high average range of general intellectual abilities. "Provident acted appropriately in rejecting Bailey's claims when it found insufficient objective support for a long-term disability claim."

3.  **Plaintiff's Opposition Fails to Address the Substantial Medical Evidence Demonstrating That He Was Capable of Full-Time Employment By April, 2002.**

Plaintiff contends that Aetna's decision was faulty because it was based only on "file reviews" by medical consultants and a vocational expert. Pl. Opp. at 13-14. As the detailed description of the medical record in Aetna's initial brief demonstrates, plaintiff's argument mischaracterizes the record.

Aetna's decision was based not only on the reports of physicians who performed independent medical reviews of his medical records *but also* on the reports of physicians who actually examined and tested plaintiff and whose clinical findings demonstrated that he had the capacity for work at a reasonable occupation. By the summer of 2001 – over eight months before Aetna actually terminated further benefits – Dr. Jerrold Kaplan of Gaylord Hospital (a treating physician), Dr. Daniel LoPreto and Dr. James Cole had all concluded that Mr. Bennett was capable of full-time employment. Moreover, the clinical findings made by Gaylord Hospital during the course of its extensive neuropsychological testing of plaintiff in January, 2001, were consistent with the conclusion that Mr. Bennett could resume full-time employment 15 months later. These reports, which are described in detail in Aetna's earlier brief, provided as follows:

- Dr. Henderson of Gaylord Hospital concluded in January, 2001, that Mr. Bennett was "currently functioning at a level that is commensurate with his estimated pre-morbid abilities;" that he demonstrated "high average to superior basic attention, visuo-spatial skills, language abilities, memory, general intelligence and higher order 'problem-solving'

6

skills;" and that he had displayed no signs of fatigue or declining performance during his testing. (AR at 254).[4]

- In July, 2001, Dr. Daniel LoPreto, a clinical psychologist, concluded that Mr. Bennett's medical records "fail[ed] to reveal any cognitive deficits in the present that would preclude his ability to function in a competitive work environment." (AR at 159-60.)

- In August, 2001, Dr. Kaplan examined Mr. Bennett and concluded that he could immediately return to work on a part-time basis and could assume a 40 hour weekly schedule within one month. (AR at 142.)

- In August, 2001, Dr. James Cole found that plaintiff had "an unrestricted physical capacity with the only restriction being avoidance of close contact with volatile or liquid chemicals such as copper, mercury, [or] hydrocarbons." (AR at 156.) Dr. Cole concluded that there were no physical restrictions that precluded Mr. Bennett from working a normal work schedule. (Id. at 157-58.)[5]

---

[4] While Dr. Henderson recommended that plaintiff return to work on a part-time basis and increase his hours thereafter, Aetna's decision that plaintiff was capable of full-time work as of April, 2002 was reasonable given the nature of Gaylord Hospital's clinical findings, the passage of 15 additional months since those findings, and the opinions of Drs. Kaplan, LoPreto and Cole that Mr. Bennett was capable of full-time employment as of the late summer of 2001.

[5] Grosz-Salomon v. Paul Revere Life Insurance Co., 237 F.3d 1154 (9th Cir. 2001), the only authority cited by plaintiff in support of his position, is inapposite. In that case, an insurer denied a claim for disability benefits based on a review performed by two "in-house" medical consultants. In this case, Aetna did not rely on the opinions of in-house physicians but those of outside treating physicians and two independent physicians. Moreover, the fact that a denial of benefits is based solely on file reviews by independent physicians does not render the decision arbitrary and capricious. See Kocsis v. Standard Ins. Co., 142 F. Supp.2d 241, 252-53 (D. Conn. 2001) (upholding claims decision based on opinions of two medical professionals who reviewed plaintiff's claims file.)

Of the many doctors who considered plaintiff's condition, only Dr. Robban Sicca concluded that, by the spring of 2002, Mr. Bennett had only a part-time work capacity. However, Dr. Sicca's isolated position does not invalidate Aetna's decision. Dr. Sicca did not provide any test results or other objective data to support her opinion.[6] Further, the grant of discretion in Accenture's Plan authorizes Aetna to weigh conflicting medical opinions and to determine, based on the entire record, whether a claimant has proven that he is entitled to benefits. See Rosario v. Local 32B-32J, No. 00CIV7557, 2001 WL 930234, at *4 ("the mere existence of conflicting evidence does not render the Trustee's decision arbitrary or capricious. . . . The Plan afforded the Trustees discretion to weigh different medical opinions and to determine, based upon the evidence submitted, whether an applicant is physically able to work.") Aetna properly exercised that discretion by carefully examining plaintiff's entire record and concluding, based on the totality of the medical evidence, that Mr. Bennett was capable of full-time employment. See Kocsis v. Standard Ins. Co., 142 F. Supp.2d 241, 252-53 (D. Conn. 2001) (despite conflict with opinion of treating physician, conclusions of two independent medical reviewers "created on the basis of a review of the entire claims file, amply represent evidence that a reasonable mind can accept as adequate to support the decision

---

[6] See Maniatty v. UNUMProvident Corporation, 218 F. Supp. 2d 500, 504 (S.D.N.Y. 2004), holding, in response to argument that the plan itself does not state that objective evidence is necessary to establish disability, "it is hardly unreasonable for the administrator to require an objective component" of proof of disability.

to deny the plaintiff disability benefits on the basis of more than a scintilla but less than a preponderance.'")[7]

Plaintiff also contends that the review performed by Aetna's vocational expert was improper because it allegedly did not include reports that plaintiff should work part-time. Pl. Opp. at 3, 13. Plaintiff's contention has no merit. The materials sent to the vocational expert included an "Estimation of Physical Capacities" and a "Mental Residual Functional Capacity Assessment." See AR at 157-58 and 161-62. Although these forms were prepared by independent consultants rather than plaintiff's treating physicians, they are based on existing clinical data and objective medical evidence.[8] Rather than addressing the ultimate question of whether plaintiff could work "full-time" or "part-time," these forms described his ability to perform specific physical and mental tasks over a designated time period; the vocational expert relied upon these skills (along with plaintiff's education and experience) to identify several positions in the local labor market for which he was qualified. Plaintiff does not contend, and has submitted no record evidence to establish, that the data contained in these reports is

---

[7] In his "Statement of Material Facts in Dispute," plaintiff identifies several "facts" that would supposedly preclude summary judgment. These alleged "facts" (e.g., that plaintiff was "unable to work full time at any occupation as of January, 2002;" that there was "no objective evidence" to support Aetna's decision; and that Aetna "disregarded objective evidence") are legal arguments based on plaintiff's interpretation of the record, not objective facts, and therefore provide no basis to deny Aetna's motion.

It should also be noted that, under the arbitrary and capricious standard, review is limited to the existing administrative record. See Miller v. United Welfare Fund, 72 F.3d at 1070. Accordingly, plaintiff's affidavit, which is not part of that record, must be excluded and cannot serve as a basis to create a genuine dispute of material fact.

[8] Thus, the Estimation of Physical Capacities states that it is "based solely on clinical evaluations, objective medical evidence and diagnostic test results in the medical records at the time this form was completed" (AR at 158); the Mental Residual Functional Capacity Assessment states that it is "derived from the objective medical evidence that exists on examination and/or contained in the patient's medical records" (AR at 161).

9

inaccurate, and he therefore provides no reason to reject the conclusions of the vocational expert.[9]

## CONCLUSION

For the preceding reasons, Aetna reasonably concluded that plaintiff failed to establish his entitlement to continued disability benefits under the "any occupation" standard of Accenture's disability plan. Aetna's decision was not arbitrary and capricious, and the Court should grant its motion for summary judgment.

Respectfully submitted,

DEFENDANT,
AETNA LIFE INSURANCE COMPANY

By /s/ Vaughan Finn
Vaughan Finn
Federal Bar No. ct13963
Shipman & Goodwin LLP
One American Row
Hartford, CT 06103-2819
(860) 251-5505
(860) 251-5599
Its Attorney

---

[9] Plaintiff's brief concludes by stating that e-mails between Accenture and Aetna create an "inference" that Aetna's decision was influenced by Accenture's interest in terminating plaintiff's employment. (Pl. Opp. at 15.) This remark is puzzling but irrelevant since neither the e-mails nor the Plan suggest that there is any connection between continued benefits and continued employment. To the contrary, plaintiff's employment status has no bearing on his right to continued benefits. See Group Disability Policy, EL-6 "Extended/Continued Coverage" (linking continued benefits to continued disability, not to employment.)

## CERTIFICATE OF SERVICE

I hereby certify that, on this 20th day of November, 2003, I caused to be served by first-class mail, postage prepaid, a copy of Defendant's Reply Brief in Further Support of Motion for Summary Judgment upon:

> Katrena Engstrom, Esq.
> John Williams, Esq.
> Williams and Pattis, LLC
> 51 Elm Street, Suite 409
> New Haven, CT 06510

*/s/ Vaughan Finn*
Vaughan Finn

358517 v.01