states that the plaintiff's position was "transportation administrator: prepared review reports, programming, supervise parts room personnel environment, work in garage . . ." and that he was unable to return to his job. Plaintiff listed three treating doctors: Drs. Sesin, Akhtar, and Parnes. On approximately March 6, 1996, five months after the termination of his employment, Con Edison's Employee Benefits Department received plaintiff's claim for Long Term Disability. Con Edison completed its portion of the form and sent it to Met Life to prepare a claims file and to make a recommendation to Con Edison.

> n6 Although plaintiff wrote the date of October 24, 1995 on the form, the medical certification that may be part of the same form is dated May 1996 and Con Edison states that it received plaintiff's claim on March 6, 1996. In light of other events, these dates make little sense, and the chronology with respect to plaintiff's LTD Plan claim is therefore in doubt.

[*19]

The medical reports completed by Drs. Akhtar and Parnes show that the predominant basis for plaintiff's application was the continuing problems with his knees. In a report dated May 6, Dr. Parnes stated that plaintiff has "difficulty in ambulation, stiff, weak, legs tend to give way" but also that we was "very depressed." In a report dated May 26, 1996, Dr. Akhtar reported that plaintiff suffered from "post traumatic arthritis [sic] knees" and "unexplained weight loss" and found "extreme limitations" with respect to most of the items listed on the form, including standing, walking, and balancing. After a review of plaintiff's records by a disability nurse specialist, Met Life determined that the medical records supported the claimant's inability to perform the functional requirements of his occupation and recommended to Con Edison that it approve benefits for plaintiff.

Based on Met Life's recommendation, Con Edison proceeded to make its own determination of benefits for the first 24 months of coverage under the LTD Plan. On August 2, 1996, Raymond Herzog of Con Edison's Employee Benefits Department contacted Dr. Michael Crane, Vice President of the Occupational Health Department, [*20] and stated that plaintiff had filed a claim for LTD benefits. Dr. Crane reviewed Met Life's claims file, which included medical records since 1995, and determined that plaintiff was not totally disabled at the time of his employment termination. As a result, on September 18, 1996, Dr. Crane sent Herzog a memo that concluded the following,

> Mr. Friedman was temporarily disabled by several treatable conditions. I find nothing that indicates total and permanent disability, particularly in the context of the extensive opportunities for limited duty available at Con Edison.

Dr. Crane included no statement of what he believed to be the requirements of plaintiff's job and provided no other reasoning for his determination. Based on Dr. Crane's determination, on October 22, 1996, Herzog sent plaintiff's attorney a letter rejecting plaintiff's claim. On November 14, 1996, Con Edison advised Met Life of its determination. Plaintiff never received any benefits under the LTD Plan.

Social Security Determination

Since ceasing to work at Con Edison in January 1995, plaintiff states that he has been unable to work and that he has therefore made no effort to look for other [*21] work. He complains of pain in his knees and memory problems. Plaintiff applied for Social Security disability benefits based on both physical ailments and additional mental ailments. Although the Social Security Administration originally denied plaintiff's claim, after a hearing, the ALJ decided that plaintiff was disabled. The ALJ issued a decision on September 13, 1997, in which the ALJ

> concluded that the claimant suffers from an organic brain disorder which meets the criteria specified in [the regulations] and that such has been the circumstance since January 12, 1995, as alleged.

With respect to his mental condition, the ALJ concluded that

> the evidence establishes memory impairment associated with a dysfunction of the brain. The claimant has reported that he can no longer travel on his own, he suffers from loss of concentration and he has memory loss.

Additionally, the ALJ reviewed the evidence of plaintiff's knee condition and then concluded that although

> claimant's orthopedic impairment falls short of meeting or equaling the requirements outlined . . . it is clear that he has a limited ability for extended sitting, walking and standing. [*22]

The Social Security Administration sent plaintiff a notice of award dated October 7, 1997, that awarded him a monthly disability benefit in the amount of $ 1,344.

## DISCUSSION

[HN1] Summary judgment may not be granted unless the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the Court must view all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); *Celotex Corp v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of his pleadings. Rule 56(e), Fed. R. Civ. P.; accord *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). [*23] In deciding whether to grant summary judgment, therefore, this Court must determine (1) whether a genuine factual dispute exists based on the evidence in the record, and (2) whether the fact in dispute is material based on the substantive law at issue.

1. ADEA Claim

[HN2] The ADEA applies to employees who are over the age of forty and prohibits employers from discriminating in the discharge of employees based on their age. See 29 U.S.C. § § 623(a)(1), 631(a); *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999). [HN3] The Second Circuit has adopted the following burden shifting approach under the ADEA:

> First, the plaintiff must establish a prima facie case of discrimination. The burden then shifts to the employer to rebut the prima facie case by providing a legitimate, non-discriminatory reason for its actions. The plaintiff then has the opportunity to show that the reason offered by the employer was not its true reason, and that age was. The question that must be asked is whether the plaintiff has shown, by a preponderance of the evidence, that he has been the victim of age discrimination.

*Hollander*, 172 F.3d at 199. [*24] See also *Raskin v. Wyatt Co.*, 125 F.3d 55, 60-61 (2d Cir. 1997) (discussing alternative mixed-motive analysis where there is direct evidence of discrimination). This is the same approach applied in Title VII actions. See *Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir. 1998). [HN4] Plaintiff's initial burden to establish a prima facie case, although "minimal," requires a showing of the following: (1) plaintiff was within the protected age group, (2) plaintiff was qualified for the job, (3) plaintiff was discharged, and (4) the discharge occurred under circumstances giving rise to an inference of age discrimination. *Hollander*, 172 F.3d at 199. Once the employer has stated a non-discriminatory reason, the presumption of discrimination disappears and

> plaintiff, in order to defeat summary judgment, must present evidence sufficient to allow a rational factfinder to infer that the employer was actually motivated in whole or in part by age discrimination.

*Grady v. Affiliated Central, Inc.*, 130 F.3d 553, 560 (2d Cir. 1997). In attacking an employer's proffered explanation as pretextual, plaintiff must "show [*25] not only pretext, but also either use of a pretext that itself implies a discriminatory stereotype, or use of pretext to hide age discrimination." *Hollander*, 172 F.3d at 200. As a result, "the fact that the proffered reason was false, does not necessarily mean that the true motive was the illegal one argued by the plaintiff.'" *Id.* at 201 (quoting *Fisher v. Vassar College*, 70 F.3d 1420, 1437-38 (2d Cir. 1997)). See also *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 57 (2d Cir. 1998) (plaintiff met burden to survive summary judgment by introducing evidence of defendants' preparation of age chart of employees, age-discriminatory statements, and sudden change in evaluation of plaintiff following complaints about discriminatory statements).

With respect to plaintiff's burden to establish a prima facie case, plaintiff has not shown that he was qualified to do the work from which he was discharged. To the contrary, plaintiff has instead attempted to demonstrate to the Court that he was totally disabled and therefore unable to work. Plaintiff has also failed to provide evidence that would support an inference that his firing [*26] was motivated by his age. As such, plaintiff has not met his initial "minimal" burden. Even assuming plaintiff had met his initial burden, however, there is no evidence that Con Edison's stated reason for the firing -- plaintiff's failure to comply with a management directive to return to work -- was pretextual. Instead, plaintiff has introduced no evidence of a discriminatory motive or act except for a single conclusory allegation that Con Edison

had a policy of firing older workers. As such, plaintiff has introduced no evidence that would create a question of fact as to whether Con Edison's stated basis for the discharge was merely a pretext to obscure a discriminatory motive. Cf. *Grady, 130 F.3d at 561*. For both reasons, summary judgment is appropriate.

2. ADA Claim

Although the elements of the claim are different, a similar burden shifting approach is applied under the ADA. Under this approach, the plaintiff bears "the initial burden of establishing a prima facie case." *Wernick v. Federal Reserve Bank of New York, 91 F.3d 379, 383 (2d Cir. 1996)*. [HN5] A prima facie case under the ADA requires a plaintiff to show that: (1) the employer is subject [*27] to the ADA; (2) the plaintiff suffers from a disability within the meaning of the ADA; (3) the plaintiff could perform the essential functions of his job with or without reasonable accommodation; and (4) the plaintiff was fired because of his disability. See *Reeves v. Johnson Controls World Servs, Inc., 140 F.3d 144, 149-50 (2d Cir. 1998)*. The requirement that a plaintiff show that he could perform the essential functions of his job with or without reasonable accommodation is derived from the fact that the ADA limits its protection from discrimination to a "qualified individual with a disability." *42 U.S.C. § 12112(a)*. See also *Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 143 L. Ed. 2d 966, 119 S. Ct. 1597, 1601 (1999)*. [HN6] The ADA provides the following definition of a qualified individual:

> The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.

*42 U.S.C. § 12111(8)*. This qualified individual inquiry "essentially [*28] boils down to examining what conduct is symptomatic of the handicap, what conduct the job in question requires, and how these two interact." *D'Amico v. City of New York, 132 F.3d 145, 151 (2d Cir.), cert. denied, 524 U.S. 911, 141 L. Ed. 2d 151, 118 S. Ct. 2075 (1998)*. The plaintiff bears the burden of "production and persuasion" with respect to whether he is otherwise qualified. See *Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 137 (2d Cir. 1995)*. Once the plaintiff has established a prima facie case, then a burden shifting approach applies similar to that described above with respect to the ADEA. See *Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 722 (2d Cir. 1994); Gallo v. Prudential Residential Services, 22 F.3d 1219, 1226 (2d Cir. 1994)*.

Plaintiff's ADA claim alleges that he was terminated because of his knee injuries as follows:

> Defendant Con Edison unlawfully, willfully, knowingly and intentionally discriminated against plaintiff in his employment by reason of his medical and physical disabilities, in that plaintiff's employment was terminated while he was totally disabled and unable to return [*29] to work, approximately twenty-three days prior to the expiration of his sick leave authorization pursuant to Con Edison's sick leave plan, concomitantly, within twenty-three days of his entitlement to long term disability benefits.

(Emphasis added.) The Court interprets this claim to allege that plaintiff was discriminated against in his discharge because of his knee injuries. Nonetheless, plaintiff has failed to make out a prima facie under the ADA, because plaintiff does not allege that he was a "qualified individual" within the meaning of the ADA. Even a totally disabled person receiving disability benefits is not excused from this requirement and must allege that he or she can "perform the essential functions" of his job "with reasonable accommodation." Plaintiff's specific allegation that he was unable to work is fatal to his claim. n7 Plaintiff has therefore failed to meet his prima facie burden under the ADA, and the ADA claim must be dismissed. n8

---

n7 Both parties make a number of arguments with respect to the collateral effects of the SSA's determination with respect to plaintiff's ADA claim. The Supreme Court recently held that, although factually relevant, a special legal presumption should not be applied to a plaintiff's ADA claim because of a finding of disability in an SSA proceeding. See *Cleveland, 119 S. Ct. at 1603*. [*30]

n8 One additional aspect of plaintiff's claim is worth noting. Neither the plaintiff nor Con Edison analyzes the possible relevance of the fact that plaintiff was on sick leave at the time of discharge. Specifically, neither party addresses whether the fact that plaintiff was on sick leave at the time of his termination alters the plaintiff's prima facie burden to show he is a "qualified individual with a disability." The employer's provision of sick leave has been regarded as a

"reasonable accommodation" to the disabled worker. See, e.g., *29 CFR § 1630.2*, app. at 1630.2(o); *Hankins v. The Gap, Inc., 84 F.3d 797, 801 (6th Cir. 1996)*. Plaintiff might have argued that he could meet the qualified individual standard, and thus his prima facie burden, by regarding his sick leave as an accommodation offered to him by Con Edison. Even under such a theory, however, the plaintiff could not argue for indefinite sick leave and would be required to show that he could return to work at the end of the sick leave to which he was entitled. See *Rogers v. International Marine Terminals, Inc., 87 F.3d 755, 759-60 (5th Cir. 1996); Myers v. Hose, 50 F.3d 278, 283 (4th Cir. 1995)*. Applied to the present facts, plaintiff could theoretically have argued that he made out a prima facie ADA claim by showing that he could have performed his work duties at the end of the sick leave period that he had accumulated, or that the employer should have provided to him as a reasonable accommodation. Nonetheless, plaintiff's failure to allege that he could return to work at any point in time is fatal to his claim even had he pursued this alternative theory.

[*31]

3. New York State Claims

Plaintiff also alleges age and disability discrimination claims under Article 15 of the New York Human Rights Law ("NYHRL"). Since they are governed in relevant part by the same standards as the ADEA and ADA claims, summary judgment is also appropriate in favor of Con Edison with respect to those claims. See *Reeves v. Johnson Controls World Servs., Inc.., 140 F.3d 144, 154-57 (2d Cir. 1998)* (elements of prima facie case and pretext analysis are the same as in ADA although the definition of "disability" is different in NYHRL and there is no requirement to identify a substantially limited major life activity); *Wanamaker v. Columbian Rope Co., 108 F.3d 462, 467 (2d Cir. 1997)* (ADEA and NYHRL standards are the same); *Altman v. New York City Health and Hospital Corp., 100 F.3d 1054, 1061 (2d Cir. 1996)* (granting summary judgment on ADA claim based on qualified individual element also disposed of NYHRL claim).

4. LTD Plan Claim

Although not mentioning ERISA, plaintiff's fifth claim alleges that plaintiff was a participant in the LTD Plan maintained by Con Edison and alleges a barrage of wrongful [*32] acts connected to the LTD Plan. Specifically, the claim alleges that Con Edison and Met Life wrongfully deprived plaintiff of LTD Plan benefits to which he was entitled, in breach of the terms of the Plan; that Con Edison's benefit denial was a "sham and a fraud"; that "Met Life breached and violated its fiduciary duty and obligation as insurer" to investigate and review Con Edison's determination; that both Con Edison and Met Life breached the covenant of good faith and fair dealing; and that as a result, plaintiff incurred damages of $ 2,000,000.

Con Edison argues that plaintiff's claim with respect to the LTD Plan is preempted by ERISA and that plaintiff has failed to state a claim. Con Edison also argues that even if a claim exists, summary judgment is appropriate since there is no evidence that its initial determination that plaintiff was ineligible for benefits was arbitrary and capricious. Met Life argues that since it has never made a secondary determination of plaintiff's disability, if the Court finds that Con Edison's evaluation was improper, plaintiff should be required to exhaust the requirements of the Plan before recovering against it. In response, plaintiff argues [*33] that there is a "serious question" as to whether the LTD Plan falls within ERISA, that the insurance saving provision in ERISA precludes preemption, and that the SPD cannot be used as evidence of the LTD Plan's terms. n9

---

n9 Plaintiff also makes the puzzling argument that defendants are estopped from asserting that plaintiff is not disabled because of the ALJ's determination of plaintiff's disability before the SSA. Plaintiff does not contend that defendants or their privies were parties to that proceeding, or that either Con Edison or Met Life took a position in that proceeding. In addition, Con Edison and Met Life only considered the condition of plaintiff's knees, while the ALJ also considered plaintiff's dementia.

---

A. LTD Plan under ERISA

[HN7] ERISA defines an "employee welfare benefit plan" as follows:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund or program was [*34] established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . benefits in the event of . . . disability . . .

*29 U.S.C. § 1002*(1). This section has been interpreted as follows in the group insurance context:

> "[A] 'plan, fund or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits .... The purchase of a group policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established."

*Grimo v. Blue Cross/Blue Shield of Vermont, 34 F.3d 148, 151-52 (2d Cir. 1994)* (quoting *Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982)*). [HN8] In addition, Department of Labor regulations create a safe harbor to allow group insurance programs to avoid falling within ERISA:

> the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance [*35] program offered by an insurer to employees or members of an employee organization, under which:
> (1) No contributions are made by an employer or employee organization;
> (2) Participation [in] the program is completely voluntary for employees or members;
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

*29 C.F.R. § 2510.3-1(j)*. A plan not meeting all four of these criteria is an "employee welfare benefit plan." *Grimo, 34 F.3d at 152*.

There can be little question but that the LTD Plan falls within ERISA. It has a clear class of intended beneficiaries and is governed by plan documents. In addition, Con Edison makes contributions [*36] on behalf of its employees and participation in the program is not voluntary, since Con Edison states that all management employees are enrolled.

B. ERISA Preemption

[HN9] Section 514(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." *29 U.S.C. § 1144*(a). [HN10] With respect to preemption of state common law claims, a two-part inquiry governs: (1) whether the claim is "related to an employee benefit plan" and if so, (2) "whether there is an exception under ERISA that precludes pre-emption of the state law." *Devlin v. Transportation Comms. Int'l Union, 173 F.3d 94, 101 (2d Cir. 1999)* (contract action involving welfare plan). The "related to" requirement has been deemed to be met where the "cause of action makes specific reference to, and indeed is premised on, the existence of a . . . plan." *Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138, 112 L. Ed. 2d 474, 111 S. Ct. 478 (1988)* (preempting state cause of action for wrongful discharge premised on firing because of proximity to vesting of pension benefits). See also *Devlin, 173 F.3d at 101* [*37] (applying same analysis to welfare plan and finding preemption of breach of contract claim where "resolution of the claim would necessarily involve interpreting the plan, its design, and ERISA . . .").

Although confusingly stated and borrowing language from a number of common law causes of action, plaintiff's claim, in essence, states that he has been deprived of LTD Plan benefits to which he is entitled. Resolution of this claim involves interpretation of the LTD Plan and the requirements of ERISA. A failure to find preemption in the current case would subject the LTD Plan to two sets of obligations, one under a state law cause of action outside the plan to pay out plan benefits, and a second set of obligations inside the plan under ERISA. As such, the present claim is preempted by ERISA. See *McClendon, 498 U.S. at 142; Smith v. Dunham-Bush, Inc., 959 F.2d 6, 9 (2d Cir. 1992)*.

Plaintiff's argument that preemption is precluded by the ERISA savings clause dealing with insurance is in error. ERISA Section 514(b)(2)(A) removes from ERISA preemption, "any law of any State which regulates insurance, banking, or securities." *29 U.S.C. § 1144* [*38] (b)(2)(A). That provision, however, does not apply to plaintiff's claim. See, e.g., *Franklin H. Williams Ins. Trust v. Travelers Ins. Co., 50 F.3d 144, 149-150 (2d Cir. 1995)* (stating three-prong test applicable under *29 U.S.C. § 1144*(b)(2)(A)). Plaintiff has not articulated any way in which his claim is related to any state law

regulating insurance, and the Court can find no such relationship.

C. Validity of ERISA Claim

[HN11] Section 502(a)(1)(B), the ERISA civil remedies provision, allows civil actions to be brought, in among others circumstances,

> by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. 1132(a)(1)(B). The "carefully integrated civil enforcement provisions" contained in this section are interpreted as exclusive, since "Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Smith, 959 F.2d at 11* (internal quotations omitted). [HN12] "Civil suits by beneficiaries [*39] to recover benefits under an ERISA plan can be brought only under the civil enforcement provision of ERISA, 29 U.S.C. § 1132(a)." *Grimo, 34 F.3d at 151.*

Plaintiff has adequately stated a claim for benefits under Section 502 (a). n10 The Court agrees with the defendants that the fifth claim does not explicitly mention ERISA, borrows language from a variety of common law contract and tort theories in a confusing and disorderly fashion, and seeks damages in excess of that recoverable under ERISA. Nonetheless, the claim also contains the elements of a cause of action under ERISA: that Con Edison and Met Life maintain a welfare plan on behalf of Con Edison management employees to provide long-term disability benefits, that plaintiff is a plan participant, and that plaintiff was improperly denied benefits to which he was entitled under the plan because of an improper determination by Con Edison. Defendants have pointed to no substantive impediment to interpreting the claim as an ERISA claim for benefits. n11

> n10 Con Edison and Met Life assume that the plaintiff was entitled to seek benefits under the terms of the SPD at the time of his application. Under the section entitled "When Coverage Ends," the SPD states that:
> > If you retire -- or if you leave Con Edison before retirement for any reason except disability -- your LTD Plan coverage ends on the last day of the month when your employment with the Company ends. You cannot convert your LTD Plan coverage to an individual policy.

[*40]

> n11 The parties also spend some time debating whether the plaintiff has a right to a jury trial for this claim. [HN13] There is no right to a jury in claims to recover ERISA benefits. See *Tischmann v. ITT/Sheraton Corp., 145 F.3d 561, 568 (2d Cir. 1998).*

D. Arbitrary and Capricious Review

[HN14] In ERISA cases under Section 502(a)(1)(B), a denial of benefits

> is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

*Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989).* See also *Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995); Jordan v. Retirement Committee of Rensselaer Polytechnic Institute, 46 F.3d 1264, 1269-71 (2d Cir. 1995).* When the plan does grant discretion over eligibility, then the court should "not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" *Pagan, 52 F.3d at 441.* [*41] See also *Jordan, 46 F.3d at 1270-71.* The party seeking deferential review bears the burden of proving that the arbitrary and capricious standard applies. *Sharkey v. Ultramar Energy Ltd., 70 F.3d 226, 230 (2d Cir. 1995).* Under the "arbitrary and capricious" standard, the Court must find the decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan, 52 F.3d at 442* (quotation and citation omitted) (benefit eligibility). "This scope of review is narrow, thus [the Court is] not free to substitute [its] own judgment." Id.

There can be little dispute that the appropriate standard of review is the arbitrary and capricious standard, since the language of the SPD explicitly places benefit determinations at the discretion of Con Edison and Met Life. There can similarly be little dispute that the SPD is the relevant plan document, as contained in the "Options" booklet provided by Con Edison to its employees. In *Heidgerd v. Olin Corp., 906 F.2d 903 (2d Cir. 1990),* the Second Circuit found language in a summary plan description to be legally controlling. In

that case, the [*42] summary plan description was the only document distributed to employees, and the only document on file with the Secretary of Labor. The court held that the employer could not therefore rely on language in other plan documents which contradicted the language in the plan summary, and that the language in the plan summary governed. *Id. at 907-08*. The holding of Heidgerd has been distinguished where other documents are distributed to employees along with the SPD and where the SPD explicitly says that the SPD is controlled by conflicting plan documents and there is a conflict in terms. See *Four Winds v. Travelers Ins. Co., 1995 U.S. Dist. LEXIS 16109, *6 n.3, 93 Civ. 4284 (DLC), 1995 WL 640476, at *5 n.3 (S.D.N.Y. Nov. 1, 1995)*.

Plaintiff does not contest defendants' argument that the SPD is the only document that sets forth the terms of the LTD Plan and is the document that meets the requirements of ERISA Section 402(a)(1), which requires that "every employee benefit plan shall be established and maintained pursuant to a written instrument." *29 U.S.C. § 1102*(a)(1). Plaintiff's argument that the group health insurance policies govern the terms of the LTD Plan instead [*43] of the SPD has little merit. The policies are contracts between Con Edison and Met Life and do not purport to set up an ERISA plan. The policies were also never distributed to employees. In addition, plaintiff has pointed to no language in the policies that would give him additional rights or remedies beyond those contained in the SPD. Specifically, plaintiff has pointed to no language that would alter the benefit determination process outlined in the SPD or deprive either Con Edison or Met Life of discretion in denying or awarding benefits. Plaintiff similarly points to no language in the policies addressing the decision to award benefits that could contradict, even by silence, the clear terms of the SPD.

The ultimate question raised by the ERISA claim is therefore whether the benefit determination that plaintiff was not disabled was arbitrary and capricious. On summary judgment, the pertinent question is whether Con Edison can show the absence of a question of fact as to whether its actions were arbitrary and capricious. Under the terms of the LTD Plan, the Met Life determination is not triggered until benefits have been paid for 24 months. n12 As a result, no determination by Met [*44] Life is at issue, only the determination by Con Edison. Con Edison argues that there is no question of fact as to the arbitrary nature of the benefit determination in its initial brief in support of its motion, but does not press that argument in its reply brief.

n12 Con Edison and Met Life both argue that plaintiff should be required to exhaust his remedies under the plan with respect to Met Life. See, e.g., *Kennedy v. Empire Blue Cross and Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993)*. Nonetheless, Met Life's determination is not triggered until plaintiff has been paid 24 months of benefits after Con Edison's initial determination. As such, the LTD Plan contains no unmet exhaustion requirement at this point because no benefits have been paid.

The relevant issue for Con Edison's benefit determination was whether plaintiff "cannot do [his] job because of a sickness or injury for which [he is] under a doctor's care." In support of its motion, Con Edison has submitted an affidavit from Dr. [*45] Crane, the person at Con Edison who made the benefit determination, and a copy of the sixty-page claim file. As noted above, Con Edison does not identify the forms that are contained in the claim file, explain the chronology, or provide any "translation" of the largely illegible handwriting. To the extent that it is intelligible, the claim file contains the following evidence supporting plaintiff's disability. The regular physician progress reports contain opinions from Drs. Parnes and Akhtar that the defendant is unable to work and their prognoses from the LTD Plan claim application that plaintiff faces severe limitations. It also contains the certification by Dr. Akhtar to Con Edison dated October 23, 1995 noting that, based on plaintiff's knees, his weight loss, and his distance from work, "he cannot work for undetermined time." The claim file also contains the following evidence that plaintiff was able to work. The file contains forms, apparently filled out by Dr. Bondi, the outside consultant, indicating that based on his examination, plaintiff could work with restrictions and do "administrative work" as of September 18, 1995. Dr. Richardson's handwritten notes of her conversation [*46] with Dr. Akhtar reflect Dr. Akhtar's opinion that plaintiff is fit to perform on restricted duty. Numerous Con Edison panel actions indicate the change in plaintiff's diagnosis from sick leave to eventual approval for duty effective September 21, 1995. In summary, the record considered by Dr. Crane contains conflicting information regarding plaintiff's medical condition.

Importantly, there is no evidence that Dr. Crane performed the correct inquiry required by the terms of the LTD Plan. Dr. Crane only informed Herzog that plaintiff could do sedentary work. In his more recent affidavit in support of this motion, Dr. Crane states that he "determined that Plaintiff was not totally disabled from his job at the time of his employment termination." There is therefore no evidence in the record that Dr. Crane conducted the proper inquiry as to the plaintiff's

ability to perform his job when he made the benefit determination. There is no mention of what Con Edison regarded as the necessary physical requirements for plaintiff to continue at his job or how a conclusion was drawn that plaintiff met those requirements. In short, the record lacks evidence that Dr. Crane made a reasoned [*47] decision pursuant to the terms of the LTD Plan.

Based on this record, the Court cannot say that there is no question of fact as to whether the benefit determination by Dr. Crane was arbitrary and capricious. Based on the record on summary judgment, there are factual questions as to whether Dr. Crane considered the appropriate issue for an initial benefit determination under the LTD Plan, whether he made a reasoned decision given the complete absence of analysis of plaintiff's job and condition, and whether the decision was based on substantial evidence given a contradictory record. As such, summary judgment is inappropriate on the present record given the existence of material questions of fact as to the arbitrary and capricious nature of the benefit determination.

### CONCLUSION

Defendants' motion for summary judgment is granted with respect to the first four causes of action. Defendants' motion is denied with respect to the fifth cause of action. Plaintiff's motion for summary judgment and motion in limine are denied.

SO ORDERED:

Dated: New York, New York

July 19, 1999

DENISE COTE

United States District Judge